UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATHEW MALIK PRINGLE,
    Plaintiff,

v.

DINA JOSE, et al.,
    Defendants.

Case No. 21-cv-00648-WHO

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

## INTRODUCTION

Plaintiff Mathew M. Pringle's 42 U.S.C. § 1983 complaint is DISMISSED with leave to file an amended complaint on or before **July 7, 2021**. His action cannot proceed as currently constituted: Pringle has failed to identify a proper defendant and has failed to allege the facts necessary to support several of his claims.

Failure to file a proper amended complaint by the deadline, or a failure to comply in every respect with the instructions given in this order, will result in the dismissal of this suit and the entry of judgment in favor of defendants.

## DISCUSSION

### I. LEGAL STANDARD

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). Pro se pleadings must be liberally construed.

*See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Furthermore, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## II.   LEGAL CLAIMS

Pringle alleges that for fourteen days he was denied access to a telephone, religious services, the law library, a shower, cleaning supplies, the yard; prevented from contacting a private attorney or bail bondsman; and detained in a basement. (*See* Dkt. No. 1 ("Complaint") at 3.) Pringle's allegations implicate the First, Sixth, Eighth, and Fourteenth Amendments.

### A.   Pringle must name proper defendants.

Pringle names four defendants: Dina Jose, Director of the Napa County Department of Corrections; Lt. Fernandez, an administrator in the Napa County Department of Corrections; the Napa County Department of Corrections; and the "owners" of the Napa County Department of Corrections. (*See* Dkt. No. 1 ("Complaint").) Pringle does not explain how any of these four defendants are responsible for his injuries.

Pringle does not state that Director Jose or Lt. Fernandez personally deprived him of his rights, that they directed the deprivation, or that they knew the deprivation occurred.

2

(*See generally*, Compl.) To state a claim against a particular defendant for a violation of his civil rights, Pringle must allege that the defendant was personally involved in the alleged wrongs. To do so, he must show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dept. of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Either personal involvement or integral participation in the alleged constitutional violation is required before liability may be imposed. *See Hopkins v. Bonvicino*, 573 F.3d 752, 769-70 (9th Cir. 2009); *accord Jones v. Williams,* 297 F.3d 930, 936 (9th Cir. 2002). Even at the pleading stage, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Pringle cannot sue Director Jose or Lt. Fernandez purely as supervisors because "[i]n a § 1983 suit . . . masters do not answer for the torts of their servants," so "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983.").

Accordingly, Pringle's claims against Director Jose and Lt. Fernandez are dismissed with leave to amend. If Pringle chooses to amend, he must either (1) allege facts to show that Director Jose and Lt. Fernandez were personally involved in the deprivation of Pringle's rights, or (2) name defendants who were personally involved in the deprivations.

As to the Napa County Department of Corrections, Pringle can only state a claim if his injuries were caused pursuant to an official policy or custom. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Although Pringle implies that he was deprived of his rights pursuant to Napa County Jail's "Covid-19 policy" (Compl. at 3), it is not clear from the Complaint that he intended to attribute his injuries to an official policy. Accordingly, this defendant is dismissed with leave to amend. If Pringle chooses to name Napa County Department of Corrections in any amended complaint, he must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the

3

1    municipality had a policy; (3) that this policy amounts to deliberate indifference to the
2    plaintiff's constitutional rights; and (4) that the policy is the moving force behind the
3    constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474
4    (9th Cir. 1992).

To the extent Pringle sues the "owners" of the Napa County Department of Corrections, this defendant is dismissed without leave to amend. The Napa County Department of Corrections is a public entity and has no owners.

### B. More facts are needed to support Pringle's claims.

#### 1. First Amendment Claims

Pringle's claims regarding denial of access to a telephone and religious services implicate the First Amendment. His claim regarding denial of access to the law library may implicate the First or Sixth Amendment, and also will be discussed in this section.

As to Pringle's claim regarding denial of access to a telephone, courts have recognized that prisoners have a First Amendment right to communicate with persons outside prison walls, and that a telephone is one means of exercising this right. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). However, a restriction on a prisoner's First Amendment right to telephone access "'is valid if it is reasonably related to legitimate penological interests.'" *Id.* at 1048. Here, Pringle suggests that the denial of telephone access may have been related to Napa County Jail's efforts to prevent the spread of Covid-19 within that facility. (*See* Dkt. No. 1 at 3 (stating that, as partial relief, Pringle wants Napa County Jail's Covid-19 policy investigated).) More information is needed concerning (1) whether Pringle was able to communicate with persons outside the jail by means other than a telephone and (2) what, if anything, Napa County Jail personnel told Pringle as an explanation for denying him access to the telephone.

Pringle's claim that he was prevented from attending religious services implicates the First Amendment. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (recognizing that prisoners retain their rights to practice religion); *Greene v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (jail's outright ban prohibiting plaintiff, a

4

maximum security prisoner, from attending group religious worship services substantially burdened his ability to exercise his religion). To state a First Amendment claim, the prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). In addition, a prisoner must establish that a prison regulation or official burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). Security interests may require prisons to restrict attendance at religious services, but the inmates must be provided with an alternative means of meeting the need for those services. *McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987) (protective custody inmate can be denied permission to attend service of a particular denomination if he is permitted to attend interdenominational service); *see also Whitney v. Brown*, 882 F.2d 1068, 1074-78 (6th Cir. 1989) (where security concerns regarding movement of inmates are manageable, prison administrators may be required to allow inmates from all areas of institution to gather together for services). Pringle should provide more information concerning (1) whether religious services are integral to his religious beliefs, (2) what, if anything, Napa County Jail personnel told Pringle as an explanation for denying him access to religious services, and (3) whether Napa County Jail offered Pringle an alternative to attending religious services and, if so, why this alternative was insufficient.

As to Pringle's claim regarding the denial of access to the law library, more information is needed concerning why Pringle wanted to use the law library,[1] and the effect that this denial had upon Pringle. Although courts have recognized a constitutional right to access the law library, they also require a plaintiff to demonstrate that the shortcomings in a prison's legal assistance program caused him an actual injury by hindering his efforts to pursue a legal claim. *See Lewis v. Casey*, 518 U.S. 343, 350, 351

---

[1] If Pringle wished to access the law library to research potential defenses to his criminal suit, this may raise Sixth Amendment implications rather than First Amendment concerns.

(1996). In addition, prisons are not required to allow unlimited law library access, and instead are permitted to impose some limitations upon that access. *See Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985). For example, prisoners on lockdown or in the SHU may face delays in accessing the law library, but so long as the delays are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance. *See Lewis*, 518 U.S. at 361-62. Pringle should thus provide more information regarding (1) why he wanted to use the library, (2) how the denial of access to the law library affected his ability to pursue litigation, and (3) what, if anything, Napa County Jail personnel told him as an explanation for denying him access to the law library.

### 2. Sixth Amendment Claim

Pringle's claim that he was prevented from contacting a private attorney may implicate the Sixth Amendment. His claim regarding denial of access to the law library may implicate the First or Sixth Amendment, and also will be discussed in this section.

Pringle states that he "couldn't call a private attorney for 14 days." (Compl. at 3.) However, it is not clear that Pringle's Sixth Amendment right to counsel had attached during this period. The right to counsel does not attach until at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Kirby v. Illinois*, 406 U.S. 682, 689 (1972). Where the Sixth Amendment right to counsel has not yet attached, a prisoner has no Sixth Amendment right to place a phone call to his attorney. *See Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986). Even if the right to counsel had attached, a claim for violation of the right to counsel during criminal proceedings is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), until the prisoner succeeds in the criminal realm. Pringle should thus provide more information regarding whether (1) he had been formally charged at the time he was unable to contact counsel, and (2) if so, whether Pringle succeeded in defending himself against any criminal charges.

1       As noted above, Pringle claims that he was denied access to the law library. Where

2  a prison denied an inmate access to both a law library and legal assistance, this may violate

3  the inmate's Sixth Amendment right to prepare a defense. *See Milton v. Morris*, 767 F.2d

4  1443, 1445-47 (9th Cir. 1985). However, as above, Pringle should clarify whether his

5  Sixth Amendment right had attached, and whether he succeeded in defending himself

6  against any criminal charges.

### 3.     Eighth Amendment Claims

8       Pringle claims that, for fourteen days, he was denied access to a shower, cleaning

9  supplies, the jail's yard, and that he was "illegally detained in a basement." Compl. at 3.

10      Pringle's assertion that he was denied showers for fourteen days is sufficient to state

11 an Eighth Amendment claim. *See Shapley v. Wolff*, 568 F.2d 1310 (9th Cir. 1978); *cf.*

12 *Davenport v. DeRoberts*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (holding that, for inmates

13 in segregation or lockdown it may be constitutionally sufficient to limit the frequency of

14 showers to as few as one per week).

15      As to the denial of cleaning supplies, courts have held that prisoners may be

16 entitled to appropriate materials to clean their cells depending on the overall squalor of the

17 institution. *See Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985); *Toussaint v.*

18 *Rushen*, 553 F. Supp. 1365, 1385 (N.D. Cal. 1983). Pringle should therefore explain why

19 the cleaning supplies were necessary.

20      As to the denial of yard access, Pringle must explain for what purpose he wished to

21 visit the yard. For example, courts have held that prisons may not deprive inmates of

22 regular exercise. *See LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993); *Spain v.*

23 *Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (prisoners are entitled to regular exercise). If

24 Pringle needed to access the yard in order to exercise, he should (1) state this, and (2)

25 explain whether he was denied access to any alternative exercise facility, such as a gym.

26      As to the claim that Pringle was detained in a basement, Pringle should provide

27 more facts as to the harm suffered. For example, although courts have held that prisoners

28 are entitled to light and fresh air, *see Hoptowit*, 753 F.2d at 784 (light), *Spain*, 600 F.2d at

199 (fresh air), many basements possess both amenities. Indeed, many non-incarcerated persons live in basement apartments. Accordingly, Pringle should identify the unsatisfactory characteristics of the basement in which he was detained.

### 4. Fourteenth Amendment

Pringle's claim that he was denied access to a bail bondsman for fourteen days may implicate the Fourteenth Amendment. *See Carlo v. City of Chino*, 105 F.3d 493, 496 (9th Cir. 1997) (recognizing California allows arrestees to make telephone calls within three hours of arrest, including to a bail bondsman; holding that the denial of those calls "involves a substantial liberty interest"). However, it is not clear from the Complaint whether Pringle was granted telephone access immediately after his arrest but then denied access after being booked into the jail, or whether he was never given access at any point. (*See generally*, Compl.) Pringle should clarify this in any amended complaint.

## CONCLUSION

The complaint is DISMISSED with leave to file an amended complaint on or before **July 7, 2021.** The amended complaint must include the caption and civil case number used in this order (21-0648 WHO (PR)) and the words FIRST AMENDED COMPLAINT on the first page. <u>The amended complaint must also appear on this Court's form.</u> Because an amended complaint completely replaces the previous complaints, plaintiff must include in his first amended complaint all the claims he wishes to present and all of the defendants he wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from the prior complaint by reference.

Failure to file an amended complaint in accordance with this order will result in dismissal of this action under Federal Rule of Civil Procedure 41(b) for failure to prosecute.

**IT IS SO ORDERED.**

**Dated:** May 7, 2021

_____
WILLIAM H. ORRICK
United States District Judge

8